**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

TRAVIS W. GRAHAM,                                  :
                                                   :
                          Plaintiff,               :
                                                   :
          v.                                       :
                                                   :
STATE OF NEW JERSEY, NEW JERSEY                    :          Civ. No. 21-20773 (KM) (MAH)
DEPARTMENT OF CORRECTIONS,                         :
MARCUS O. HICKS, JR., SGT. C. COMITINI,            :
OFC. A. DIMICHELLE, OFC. OLEKA, OFC.               :          **OPINION**
JOHN DOE 1, OFC. JOHN DOE 2, OFC. JOHN            :
DOE 3, OFC. JOHN DOE 4, RUTGERS                    :
UNIVERSITY MEDICAL, DENTISTRY,                     :
NURSE MUHAMMAD,                                    :
                                                   :
                          Defendants.              :
_____           :

**KEVIN MCNULTY, U.S.D.J.**

I.      **INTRODUCTION**

        Plaintiff Travis W. Graham, an inmate proceeding *pro se*, filed this lawsuit pursuant to 42

U.S.C. § 1983, alleging that correctional officers assaulted him; prison medical staff were

thereafter deliberately indifferent to his serious medical needs; and prison staff retaliated against

him after he complained about the alleged assault and medical treatment. The complaint asserts

violations of the First, Eighth, and Fourteenth Amendments of the Constitution of the United

States against the following defendants: the State of New Jersey (the "State"), the New Jersey

Department of Corrections (the "DOC"), former DOC Commissioner Marcus Hicks[1] (the State,

DOC, and the Commissioner being referred to collectively as the "State Defendants"); Sergeant

_____
[1] Hicks is the former DOC commissioner. However, "[a]n action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending." Fed. R. Civ. P. 25(d). Rather, "[t]he officer's successor is automatically substituted as a party." *Id.* For clarity, the Commissioner is referred to from time to time as Hicks, even when sued in his official capacity.

C. Comitini, Officer A. DiMichelle, Officer Oleka, and Officers John Does 1-4 (these Officers being referred to collectively as the "Corrections Officer Defendants"); University Correctional Health Care, a constituent unit of Rutgers, The State University of New Jersey (improperly pled as Rutgers University Medical, Dentistry) ("UCHC"); and Nurse Muhammad.

The allegations of the Complaint, if true, are very troubling; certain Corrections Officers are alleged, *inter alia*, to have beaten and assaulted the plaintiff wantonly and sadistically rather than in a good faith effort to maintain order. A peculiar feature of this case, however, is that the actual persons alleged to have committed the wrongful acts have not been served; only certain persons and entities alleged to be vicariously responsible are now before the Court. As to them, nearly all of the claims are not viable.

Before the court are the motions of the State Defendants and UCHC (the Moving Defendants) to dismiss the complaint. (*See* DE 5 (UCHC's motion); DE 8 (State Defendants' motion).). The State Defendants and UCHC move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, although many of the State Defendants' arguments would more properly be considered as asserting a lack of subject matter jurisdiction under Rule 12(b)(1). For the reasons that follow, the motions are granted. The complaint is dismissed as against the State and the DOC for lack of subject matter jurisdiction. The claims against Commissioner Hicks in his official capacity, with the exception of any claim for prospective injunctive relief, are also dismissed for lack of subject matter jurisdiction. The claim against Commissioner Hicks in his official capacity for prospective injunctive relief, the claims against Hicks in his individual capacity, and the claims against UCHC are dismissed for failure to state a claim upon which relief may be granted.

2

## II.     BACKGROUND

### A.  The Complaint

The complaint (DE 1)[2] alleges the following facts, which I accept as true for purposes of the motions to dismiss.

During the relevant time, Plaintiff, who identifies as a member and supporter of the lesbian, gay, bisexual, transgender, and queer ("LBGTQ") community, *see* DE 1 at 10 (¶ 17), was an inmate at Northern State Prison in the closed custody administrative segregation unit. *Id.* at 10 (¶ 18). His cell was close to the cell of a fellow inmate, friend, and member of the LBGTQ community, transgender inmate Anthony Guglielo. *Id.*

On September 4, 2019, between approximately 5:00 and 8:30 p.m., Plaintiff witnessed the Corrections Officer Defendants enter Guglielo's cell. *Id.* at 10 (¶ 18). Sergeant Comitini threatened Guglielo using transphobic/homophobic slurs, *see id.* at 11 (¶ 18), allegedly yelling "get your faggot ass on that bed . . . and . . . we're gonna fuck your bitch ass up," and he and the other Corrections Officer Defendants "beat and assaulted" Guglielo for approximately 5 to 10 minutes. *Id.* at 10 (¶¶18, 20–23) ("Comitini was heard yelling . . . 'Bitch your faggot ass ain't no fucking woman you are a damn man asshole. Your big mouth faggot ass boyfriend next door is getting fuck up too.'").[3]

Plaintiff began "yelling out of the door" at the Corrections Officer Defendants that their conduct was wrong and illegal. *Id.* at 10 (¶ 19). Sergeant Comitini then told Plaintiff that after they were done beating Guglielo, they were going to beat Plaintiff. *Id.* at 11 (¶ 20) ("after we

---

[2] Docket Entry 1 is UCHC's notice of removal, which attaches Plaintiff's complaint, beginning at page 7 of the combined pdf document. This opinion cites the page numbers of the combined pdf document and the paragraph numbers in the complaint.

[3] All quotations are *sic* in the original, except as indicated by [brackets].

finish fucking your girlfriend up we are gonna beat your ass also for having [a] big mouth"). Immediately upon exiting Guglielo's cell, the Corrections Officer Defendants appeared at Plaintiff's cell and Comitini threatened Plaintiff, yelling "Graham, are you ready pussy cause it's your turn now big mouth." *Id.* at 11 (¶ 25). Plaintiff responded "I am gonna have yall's jobs and yall are gonna loose yall's freedom for what yall are doing." *Id.* at 11 (¶ 26). Sergeant Comitini then told Plaintiff to "shut the fuck up" and to "sit [his] faggot ass down on the stool" in his cell. *Id.* at 11 (¶¶ 28–29). Plaintiff sat on the stool because he was afraid; the Corrections Officer Defendants then entered Plaintiff's cell, and Sergeant Comitini "berat[ed] Plaintiff and scream[ed] homophobic epithets" at him.  *Id.* at 12 (¶¶ 29–30). For approximately 7 to 12 minutes, while continuing to yell slurs, the Corrections Officer Defendants assaulted Plaintiff, striking him multiple times in the head, and stomping, kicking, and spitting on him. *Id.* at 12 (¶¶ 27–33).

Approximately 15 minutes later, an individual identified only as "Nurse Muhammad" appeared at Plaintiff's cell with Sergeant Comitini. *Id.* at 12 (¶ 34). "[W]ithout even looking into Plaintiff's cell [Sergeant Comitini] opened up Plaintiff's food port slot and Defendant Nurse Muhammad placed a bunch of pain meds (motrin) into [Plaintiff's] cell and . . . Comitini[] slammed the food port slot shut locking it and both [he] and Defendant Nurse Muhammad exited the wing and tier." *Id.* at 12 (¶ 34).

Plaintiff sustained physical and mental harm, including "a swollen blackened right eye substantial on-going damage to the left ear drum causing substantial on-going permanent loss of hearing in left ear [and] excruciating on-going back injury and pain to [his] back." *Id.* at 12 (¶ 36). Plaintiff contends that this harm came about "[a]s a result of Defendant's unlawful actions . . . taken . . . contrary to written policy." *Id.* at 12 (¶ 35).

A few weeks later, on approximately September 27, 2019, another inmate, Michael Martin, was assigned to Plaintiff's cell. *Id.* at 13 (¶ 37). Martin assisted Plaintiff with "reporting the [aforementioned] issues and events via filing and []fully exhausting[] grievances, seeking [and] requesting medical and mental health assistance, speaking with [the DOC] Special Investigation Division . . . , filing the necessary 'Notice of Tort Claim,' [and] exhausting all grievances." *Id.* at 13 (¶ 41).

On or around November 5, 2019, Plaintiff began experiencing what he believed was retaliation for pursuing his grievances. *Id.* at 13 (¶ 42). Specifically, Sergeant Comitini harassed him, told him "not to go through with the complaint," and threatened, among other things, that he would make Plaintiff's life "a living hell." *Id.* at 13 (¶ 42). "Thereafter," on unspecified dates, Plaintiff "beg[a]n suddenly experiencing being treated indifferently such as [being] denied regular[] recreation, phone usage, [and] showers." *Id.* at 13 (¶ 43).

The complaint seeks compensatory and punitive damages; a declaratory judgment that the defendants' conduct violated Plaintiff's constitutional rights; and an injunction prohibiting the defendants "from further violating Plaintiff's rights, including but not limited to, further retaliation, subjecting Plaintiff to a retaliatory transfer, etc. after filing this suit." *Id.* at 16–17.

### B. Procedural History

Plaintiff initiated this action in the Superior Court of New Jersey, Law Division, Essex County, on September 24, 2021. DE 1. UCHC removed the action to this court on December 30, 2021, *see id.*, and moved to dismiss the complaint on January 20, 2022. DE 5. On February 4, 2022, the State Defendants moved to dismiss the complaint. DE 8. Plaintiff filed his opposition to the motions on March 30, 2022, and a supplemental submission on April 29, 2022. DE 15 &

16. UCHC filed a reply to Plaintiff's opposition submissions on April 29, 2022.[4] DE 21. The State Defendants did not file a reply.

## III.    DISCUSSION

Plaintiff alleges "violation of his civil rights under the First, Eighth, and Fourteenth Amendments of the United State Constitution, pursuant to 42 U.S.C. [§] 1983." DE 1 at 8 ¶ 2. Plaintiff also asserts (1) the "actions by Defendant Correctional Officers . . . constituted . . . excessive use of force," DE 1 at 14 (¶ 44); (2) the purpose of the Defendant Corrections Officers' assault on plaintiff was "bias[,] discrimination[,] . . . retaliation[,] and punishment . . . for Plaintiff exercising his First Amendment Expressions . . . verbally as well in writing complaints about the unfair treatment and bias discrimination of Plaintiff's . . . fellow member of the L.B.G.T.Q. Community," DE 1 at 14 (¶ 45); (3) Nurse Muhammad "acted with deliberate indifference to my serious medical needs and denied me adequate medical care," (¶ 16); (4) "Plaintiff was forced to endure . . . pain and suffering due to the lack of proper and adequate medical treatment," DE 1 at 14 (¶ 48); (5) "Defendant Corrections Officers were not properly trained and supervised," DE 1 at 14 (¶ 49); (6) "Defendant, New Jersey Department of Corrections . . . mismanaged and failed to properly train[] [and] supervise its corrections officers," DE 1 at 15 (¶ 53); (7) "Defendant, State of New Jersey, failed to safeguard and protect

---

[4] On May 3, 2022, Plaintiff filed a "Motion to File and Have Accepted Motion for Permissive Joinder of Defendants SGT. C. Comitini, OFC. Oleka, OFC. A DiMichelle, OFC. L. Torbeio, OF. L. Torbiedo, OFC. John Doe #1, OFC John Doe #2 as Within Time Pursuant to Fed. Rule of Civ. P. Rule 20(B)(2)." DE 22. On June 6, 2022, Magistrate Judge Hammer granted the motion insofar as it sought an extension of time to effectuate service on defendants Comitini, DiMichelle, Oleka, and the John Does, and gave Plaintiff until July 11, 2022, to serve those defendants. DE 23 at 5. Magistrate Judge Hammer denied the motion without prejudice insofar as it sought to add Officers Torbieo and Torbiedo. *Id.*

To date, Plaintiff has not effectuated service on Comitini, DiMichelle, Oleka, or the John Doe(s) and has not renewed his motion to join Officers L. Torbieo and L. Torbiedo as defendants. Plaintiff has also not effectuated service on Nurse Muhammad, nor has he requested an extension of time to do so. Rather, in his submission dated March 30, 2022, he asserts that "as of this writing [he is] still in the process of having additional prospective Co-Defendants . . . served, including but not limited to, Sgt. Comitini, Ofc. Oleka, John Doe 1, Ofc. John Doe 2, Ofc. John Doe 3, Ofc. John Doe 4, University Health Care employee, [and] Nurse Muhammad . . . ." DE 15 at 4.

inmates, in particular Plaintiff . . ., in their custody by operating a rogue and disorderly correctional facility," DE 1 at 15 (¶ 52); and (8) the conduct by the named Defendant Corrections Officers "constituted participation in [a] . . . conspiracy . . . to harm, abuse, intimidate and retaliate against Plaintiff . . . for his involvement in . . . constitutionally protected activity." DE 1 at 15 (¶ 54).

The complaint does not contain formal separate counts, but the intended causes of action can be readily discerned. Construing the complaint liberally, as I must, I interpret the allegations described above to assert the following causes of action against the Moving Defendants: (1) claims against the State, the DOC, and Hicks in their official and individual capacities, under the First, Eighth, and Fourteenth Amendments, for liability, including failure to train and supervisory liability, for the excessive force, deliberate indifference to Plaintiff's serious medical needs, and retaliation Plaintiff allegedly suffered in violation of the First and Eighth Amendments, and for conspiracy to deprive Plaintiff of his constitutional rights, and (2) an Eighth Amendment claim against UCHC for liability, including supervisory liability, for deliberate indifference to Plaintiff's serious medical needs.

In support of their motion to dismiss, the State Defendants argue that (1) the State, the DOC, and Commissioner Hicks in his official capacity are immune from suit under the Eleventh Amendment; (2) the claims are barred by the relevant two-year statute of limitations; and (3) the constitutional claims must be dismissed because (a) the State Defendants are not "persons" amenable to suit under Section 1983, (b) Plaintiff fails to sufficiently plead the existence of any deficient policy, practice, or custom, or actual knowledge of such a policy by a supervisor, and (c) Plaintiff has failed to sufficiently plead that Hicks was personally involved in, knew of, or acquiesced to the alleged violations of Plaintiff's constitutional rights.

In support of its motion to dismiss, UCHC argues that (1) Plaintiff's claims are time-barred, and (2) Plaintiff has failed to sufficiently plead that any alleged violation of his constitutional rights was caused by a UCHC policy or custom.

I address these arguments in turn.

### A.  Subject Matter Jurisdiction

The State Defendants assert their Eleventh Amendment objections by way of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). DE 8 at 1. But "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996). Accordingly, the State Defendants' Eleventh Amendment arguments should technically be analyzed as a Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *See id.* (motion raising Eleventh Amendment argument "may properly be considered a motion to dismiss the complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)"). Because the motion is directed to the face of the complaint, I accept the plaintiff's allegations as true and construe them in his favor. *See Petruska v. Gannon Univ.*, 462 F.3d 294, 299 (3d Cir. 2006) ("the standard is the same when considering a facial attack under Rule 12(b)(1) or a motion to dismiss for failure to state a claim under Rule 12(b)(6)").

### 1.  Eleventh Amendment Immunity

Absent a clear waiver by a state of its Eleventh-Amendment immunity or a congressional abrogation of that immunity, a federal court lacks jurisdiction to hear claims brought by a private individual against a state. *See generally Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984); *Allen v. N.J. State Police*, 974 F.3d 497, 504 (3d Cir. 2020). "This jurisdictional bar applies regardless of the nature of the relief sought," *Pennhurst State School & Hosp.*, 465

U.S. at 100. It extends to the State itself, as well as "State-affiliated entities," *Bradley v. West Chester Univ. of Pa. State Sys. of Higher Educ.*, 880 F.3d 643, 654 (3d Cir. 2018), and State officials acting in their official capacities, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (stating that "[n]either a State nor its officials acting in their official capacities" may be sued under 42 U.S.C. § 1983).

There is an exception if a plaintiff sues a state official in his or her official capacity seeking solely prospective injunctive relief. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("In an injunctive or declaratory action grounded on federal law, the State's immunity can be overcome by naming state officials as defendants."); *Iles v. de Jongh*, 638 F.3d 169, 177 (3d Cir. 2011) (explaining that a state employee may be sued in his official capacity, not "for all injunctive relief," but rather, only for "*prospective* injunctive relief," because "official-capacity actions for prospective injunctive relief are not treated as actions against the State" (emphasis in original) (internal quotation marks omitted)). Nor does the Eleventh Amendment " bar an action for damages against an official sued in his individual capacity." *Laskaris v. Thornburgh*, 661 F.2d 23, 26 (3d Cir. 1981); *see also Helfrich v. Commonwealth of Pa., Dep't of Mil. Affs.*, 660 F.2d 88, 90 (3d Cir. 1981) ("The [E]leventh [A]mendment does not deprive the district court of jurisdiction to grant prospective equitable relief against appellee state officials, however, nor does it prevent entry of an award of damages against the officials in their individual capacities.") (internal citations omitted).

### 2.  Analysis

New Jersey has not waived its Eleventh Amendment immunity and Congress has not abrogated the states' immunity from Section 1983 actions. *See Snyder v. Baumecker*, 708 F. Supp. 1451, 1455 (D.N.J. 1989) ("The State of New Jersey has not provided its consent to suit

for itself or its agencies."); *Will*, 491 U.S. at 66 ("Congress, in passing [Section] 1983, had no intention to disturb the States' Eleventh Amendment immunity"). Plaintiff's claims against the State are therefore barred by the Eleventh Amendment and this court lacks subject matter jurisdiction over them.

The DOC is an arm of the State and, as such, is entitled to Eleventh Amendment immunity to the same extent as the State. *See Fletcher v. Dep't of Corr.*, 856 F. App'x 359, 361–62 (3d Cir. 2021) ("the District Court properly dismissed the [DOC] because it is immune under the Eleventh Amendment from this § 1983 action"); *Fox v. Bayside State Prison*, 726 F. App'x 865, 867–68 (3d Cir. 2018) ("The DOC is quintessentially an arm of the state"); *Snyder v. Baumecker*, 708 F. Supp. 1451, 1457 (D.N.J. 1989) (the Eleventh Amendment "prohibits the exercise of jurisdiction over any claims asserted by plaintiff against the State of New Jersey or the [DOC] as a department or agency of the state"). Thus, this court lacks jurisdiction over Plaintiff's claims against the DOC.

Commissioner Hicks was a state official employed by the DOC at all times relevant to this lawsuit. DE 1 at 8 (¶ 5) (alleging that Hicks was the "former acting Commissioner of [the DOC], and, at the time of the incident, was responsible for carrying out his official duties at the [DOC's] Central Office."). Plaintiff's official-capacity claims for money damages against Hicks, therefore, are also barred by the Eleventh Amendment, and the Court lacks jurisdiction over them. *Kentucky v. Graham*, 473 U.S. at 165–67 (claims for damages against a state officer acting in his official capacity are barred by the Eleventh Amendment). Official-capacity claims against Commissioner Hicks (or his successor) may proceed only to the extent that Plaintiff seeks prospective injunctive relief. *Laskaris*, 661 F.2d at 26 ("To the extent that the appellant's

complaint seeks prospective relief against the state officials . . . the district court has the power to grant it.").

In sum, the Eleventh Amendment bars Plaintiff's claims against the State and the DOC, so the claims against those parties are dismissed for lack of subject matter jurisdiction.[5] The Eleventh Amendment also bars Plaintiff's claims for money damages against Commissioner Hicks in his official capacity, and those claims are also dismissed for lack of subject matter jurisdiction. Claims for money damages against Hicks in his individual capacity, however, are not barred. Likewise, any claim against Commissioner Hicks in his official capacity (or his successor) for prospective injunctive relief is not subject to dismissal on Eleventh Amendment immunity grounds.

I turn now to considering whether, as the Moving Defendants argue, Plaintiff's claims are time-barred.

## B. Statute of Limitations

The Moving Defendants argue that the applicable statute of limitations is two years, and that the Plaintiff's lawsuit is consequently barred because he filed his initial complaint in state court on September 24, 2021, asserting causes of action which accrued on September 4, 2019. DE 8-1 at 6; DE 5-1 at 7. The Moving Defendants are correct that the statute of limitations is two years, but the facts alleged at this motion-to-dismiss stage do not establish that Plaintiff's claims are time-barred. Therefore, at least at the motion-to-dismiss stage, these causes of action are not subject to dismissal as untimely.

---

[5] The dismissal of these claims is typically without prejudice because "when a district court dismisses an action for lack of subject matter jurisdiction, the dismissal should be without prejudice." *Warren v. Gantman*, 800 F. App'x 86, 88 (3d Cir. 2020) (summary order); *see also N.J. Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 241 n.8 (3d Cir. 2011) (explaining that dismissals for lack of subject matter jurisdiction are "by definition without prejudice"). Plaintiff should understand, however, that the Eleventh Amendment bars all of Plaintiff's claims against the State and the DOC, and Plaintiff's official capacity claims for money damages against Hicks.

### 1.  Applicable Law

"A section 1983 claim is characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). "[A] section 1983 claim arising in New Jersey has a two-year statute of limitations." *Id.* at 185. The date that a Section 1983 cause of action accrues is determined by federal law. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). A claim accrues, and the two-year statute of limitations begins to run, "when the plaintiff knew or should have known of the injury upon which its action is based." *Id.* (internal quotation marks and citations omitted). "As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Id.* (citing *United States v. Kubrick*, 444 U.S. 111, 120 (1979)). Under the circumstances, Plaintiff necessarily was aware of the fact of injury at the time it occurred.

Because Plaintiff was an inmate in State custody when he filed this complaint, he is entitled to the benefit of "[t]he federal 'prisoner mailbox rule,'" under which "a document is deemed filed on the date it is given to prison officials for mailing." *Pabon v. Superintendent S.C.I. Mahanoy*, 654 F.3d 385, 391 n.8 (3d Cir. 2011); *see also Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998) ("[W]e hold that a pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court.").

### 2.  Analysis

Plaintiff's claims for assault and denial of medical care accrued on September 4, 2019. DE 1 at 10, 12 (¶¶ 17, 34). Because the statute of limitations is two years, those claims would be timely if the complaint is deemed filed by September 4, 2021.

The signature line on Plaintiff's complaint bears the date September 4, 2021, the final day of the limitations period. DE 1 at 17. The Civil Case Information Sheet accompanying the complaint bears a stamp which, while not entirely legible, appears to indicate that the Superior Court of New Jersey, Law Division, Essex County, received the complaint on September 21, 2021, 17 days after the expiration of the limitations period. DE 1 at 18. [6]

Plaintiff, citing *Houston v. Lack*, 487 U.S. 266, 276 (1988), and *Burns*, 134 F.3d at 109, argues that he should be afforded the benefit of the prison mailbox rule, and that his institution's "mailing slips" will establish that he delivered the complaint to prison officials on the day he signed it. DE 15 at 9. UCHC argues in response that *Houston* and *Burns* do not control here because *Houston* applied the prison mailbox rule to notices of appeal and *Burns* applied it to petitions for habeas relief, but neither case applied the rule to Section 1983 complaints. UCHC's arguments are not persuasive, in that the *Houston* rationale would appear to apply to either situation. Moreover, the Third Circuit has specifically recognized that the prison mailbox rule may apply in Section 1983 cases. *See, e.g.*, *Moody v. Conroy*, 680 F. App'x 140, 144 (3d Cir. 2017) (stating, in Section 1983 action, that "a pleading is deemed filed at the time a prisoner executes it and delivers it to prison authorities for mailing," and noting that the district court "did not consider that doctrine"); *White v. Pa. State Police, Troop D Butler Cnty. Pa., their Sup'rs & Admin. Body*, 408 F. App'x 521, 522 (3d Cir. 2010) (in Section 1983 action, plaintiff's opposition to motion to dismiss "may be considered timely filed" because he "is a prisoner and he thus receives the benefit of the 'prison mailbox rule'"); *Spencer v. Beard*, 351 F. App'x 589, 590 (3d Cir. 2009) (in a section 1983 action, court held filing timely because under the prison

---

[6] The Moving Defendants appear to believe that this stamp reads September 27, 2021, as that is the date they state in their moving papers. *See* DE 8-1 at 6; DE 5-1 at 7. This discrepancy is immaterial at this juncture, as both dates fall outside of the two-year limitations period.

mailbox rule "filing occurs when a prisoner transmits documents to prison authorities for mailing"). Thus, Plaintiff's complaint may have been timely under the prison mailbox rule if, as he claims, he delivered it to prison officials before the end of the limitations period.

I cannot now resolve factual issues concerning the exact date that Plaintiff handed his complaint to prison officials for mailing.[7] *Richard B. Roush, Inc. Profit Sharing Plan v. New England Mut. Life Ins. Co.*, 311 F.3d 581, 585 (3d Cir. 2002) (noting that "statute of limitations is an affirmative defense" and defendants had burden of establishing its applicability); *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 487 (3d Cir. 1985) ("The statute of limitations is an affirmative defense, and the burden of establishing its applicability to a particular claim rests with the defendant."). Accordingly, the timeliness of Plaintiff's claims cannot be determined at the motion-to-dismiss stage. *See Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (if the limitations bar "is not apparent on the face of the complaint, then it may not afford the basis of dismissal of the complaint under Rule 12(b)(6)"). *See generally* Section III.C.1, *infra*. [8]

---

[7] Plaintiff submitted a declaration with his opposition brief stating that on September 4, 2021, he "turned [his complaint] over to prison officials for processing and mailing . . . using the institution[']s 'Out-Going Legal Mail Slips.'" DE 15-2 at 1-2 (¶ 2). I cannot consider this evidence on a motion to dismiss, which is generally confined to the pleadings. *See Fallon v. Mercy Catholic Med. Ctr. of Southeastern Pa.*, 877 F.3d 487, 493 (3d Cir. 2017) ("We generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record" when evaluating whether dismissal under Rule 12(b)(6) was proper. (internal brackets, quotations, and citations omitted)). Looking forward, however, I take notice that Plaintiff avers that he sent the complaint timely and believes documentation exists in the form of mailing slips. These contentions may be developed in discovery.

[8] State law, though different, would implicate the same factual issues. New Jersey law is unsettled as to whether to apply the prison mailbox rule. *See Ali v. Davis*, No. CV 19-18403 (NLH), 2022 WL 475536, at *3 (D.N.J. Feb. 16, 2022) ("[S]tate law governs when a post-conviction relief petition is 'properly filed' for purposes of tolling AEDPA's statute of limitations. New Jersey courts have not determined whether to apply the 'prisoner mailbox rule' to PCR petitions.") (quoting *Alston v. Att'y Gen. of New Jersey*, No. 18-10138, 2019 WL 2304664, at *3 (D.N.J. May 30, 2019)); *Oliver v. Lee*, No. A-1669-10, 2012 WL 1414081, at *3 (N.J. Super. Ct. App. Div. Apr. 25, 2012) (declining to determine whether "prisoner mailbox rule" applies to post-conviction relief petitions). An equitable backstop, however, would be New Jersey's equitable tolling doctrine, which arises "where the complainant has been induced or tricked by his adversary's misconduct into allowing the deadline to pass, or where a plaintiff has in some extraordinary way been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum." *McKinney v. Lanigan*, No. CV188618FLWLHG, 2019 WL 415325, at *3 (D.N.J. Feb. 1, 2019) (internal quotations omitted) (quoting *Freeman v. State*, 788 A.2d

The motions to dismiss the complaint on statute-of-limitations grounds are therefore denied without prejudice to renewal once evidence is properly placed before the Court. The Moving Defendants may be able to provide evidence establishing that Plaintiff placed his complaint in the prison mail system after September 4, 2021; conversely, the plaintiff may, as he states, be able to obtain evidence in discovery to bolster his claim that he did so on or before September 4, 2021. *See Van Buskirk*, 760 F.2d at 498 ("Since the applicability of the statute of limitations usually involves questions of fact for the jury, defendants bear a heavy burden in seeking to establish as a matter of law that the challenged claims are barred."). Factual development is required.

## C. Failure to State a Claim

### 1. The Rule 12(b)(6) Standard

I next consider the motions to dismiss the remaining claims under Rule 12(b)(6), to some degree considering for the guidance of the parties whether the jurisdictionally defective claims are otherwise flawed as well. A Rule 12(b)(6) motion to dismiss requires me to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief" against the Moving Defendants "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell*

---

867, 879–80 (N.J. Super. Ct. App. Div. 2002)). A prisoner's timely entrustment of his pleading to the prison authorities, if it is found to have occurred, would appear to implicate such equitable factors.

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A court need not "accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted). In other words, a "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotations and brackets omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

*Pro se* pleadings must be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts to support his claim that would entitle him to relief. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). *Pro se* litigants, however, must still "allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

In a Section 1983 action, the court must "'apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name.'" *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veterans Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)); *see also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.").

## 2. Section 1983 Claims

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983; *see also*

*Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002) ("Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors."). Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988)).

In the civil rights context, liability is personal and cannot be premised on a theory of *respondeat superior. Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207. "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id.*

### a.  "Persons" Amenable to Suit Under Section 1983

As set forth in Section III.A., above, the claims against the State and the DOC and the official-capacity claims for money damages against Hicks are all dismissed for lack of subject matter jurisdiction on Eleventh Amendment grounds. These claims also fail because the State, the DOC, and Commissioner Hicks in his official capacity are not "persons" amenable to suit under Section 1983. *See Howlett v. Rose*, 496 U.S. 356, 365 (1990) ("an entity with Eleventh Amendment immunity is not a 'person' within the meaning of [Section] 1983"); *McNair v. New*

*Jersey*, No. 2:21-CV-1291, 2022 WL 2967295, at *2–3 (D.N.J. July 27, 2022) (determining that the State, the DOC, and then commissioner Hicks in his official capacity "are plainly not 'persons' amenable to suit under [Section] 1983"); *Endl v. New Jersey*, 5 F. Supp. 3d 689, 697–98 (D.N.J. 2014) (the State, the DOC, and named DOC officers in their official capacity are not "persons" subject to suit under Section 1983). Therefore, to the extent Plaintiff brings claims against the State, the DOC, and Hicks in his official capacity under Section 1983 for failure to supervise, failure to train, excessive force, deliberate indifference to Plaintiff's serious medical needs, retaliation, or conspiracy, such claims are dismissed.

On the other hand, "state officials, sued in their individual capacities, are 'persons' within the meaning of Section 1983." *Hafer v. Melo*, 502 U.S. 21, 26 (1991); *see also Fox v. Bayside State Prison*, 726 F. App'x 865, 868–69 (3d Cir. 2018) ("In their individual capacities, [a prison administrator] and [DOC commissioner] are unprotected by sovereign immunity and subject to suit under 42 U.S.C. § 1983."). Therefore, Hicks in his individual capacity can be held liable for violations of Plaintiff's civil rights which he caused while acting under the color of state law.

I turn to UCHC. A private or government health-care provider such as UCHC cannot be held liable under Section 1983 for the unconstitutional acts of its employees under a theory of *respondeat superior. See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003) (private healthcare provider "cannot be held responsible for the acts of its employees under a theory of *respondeat superior* or vicarious liability"; instead, it "must provide evidence that there was a relevant [company] policy or custom, and that the policy caused the constitutional violation [alleged]"); *Vogt v. Rutgers Univ. Health Dep't for the Dep't of Corr.*, No. CV 15-3056, 2016 WL 356078, at *3 (D.N.J. Jan. 29, 2016) (applying the same standard to Rutgers, identified as a government entity). Therefore, UCHC is subject to liability under Section

1983 only if it "had a policy or custom that caused [Plaintiff's] deprivation of a constitutional right." *Defreitas v. Montgomery Cty. Corr. Facility*, 525 F. App'x 170, 176 (3d Cir. 2013) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 693–694 (1978)).

As discussed in subsections (b) through (g), immediately following, even assuming that the alleged Constitutional violations occurred, Plaintiff fails to adequately allege that Hicks personally violated Plaintiff's constitutional rights, or that UCHC maintained a policy or practice that caused any violation of Plaintiff's constitutional rights. Thus, to the extent Plaintiff asserts claims against Hicks acting in his individual capacity for supervisory liability, failure to train, excessive force, deliberate indifference to Plaintiff's serious medical needs, retaliation, and/or conspiracy, these claims must be dismissed. Likewise, to the extent Plaintiff asserts claims against UCHC for supervisory liability and/or deliberate indifference to Plaintiff's serious medical needs, these claims must also be dismissed.

### b. Supervisory Liability

Plaintiff does not allege that Hicks personally participated in the alleged application of excessive force, medical indifference, or retaliation; rather, he alleges that Hicks should be liable in his supervisory capacity as Commissioner of DOC. The complaint alleges, for example, that (1) Hicks "had the overall supervisory control of all prison facilities operated by [the DOC]," DE 1 at 8 (¶ 5); (2) Hicks "had the final responsibility for authorizing all department rules, policies, and operating procedures[,] as well as enforcing them," DE 1 at 8 (¶ 5); (3) "The conduct outlined constitutes corrections malpractice in failing to adequately . . . supervise . . . staff," DE 1 at 14 (¶ 50); and (4) the DOC "failed to properly . . . supervise its corrections officers which brought about the breach of [a] duty to protect, fosters a culture of fear, abuse[,] discrimination[,] and intimidation and the engaging in a standard policy, custom and practice of violating

[Plaintiff's] rights and the rights of inmates in its charge," DE 1 at 15 (¶53). As to UCHC, As for

UCHC, Plaintiff alleges only that UCHC is the "medical provider . . . at Northern State Prison

. . . [which] contracted with the [the DOC] . . . to [provide]. . . medical and dental care to the

inmates housed under the custody, control and care of [the DOC]." DE 1 at 10 (¶ 15).

In response to these allegations, Hicks argues that the plaintiff has "failed to plead facts,

under either [of the two theories] of supervisory liability, to state a claim for which relief can be

granted." DE 8-1 at 8. UCHC argues that "Plaintiff fails to plead any facts describing the content

of any alleged policy, how that alleged policy came to be established or how that alleged policy

prevented him from obtaining adequate medical care." DE 5-1 at 10–11.

Two theories of supervisory liability are available under Section 1983. *See Santiago v.

Warminster Tp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). Under the first theory, higher-ups "can be

liable if they 'established and maintained a policy, practice or custom which directly caused [the]

constitutional harm.'" *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juv. Det. Ctr.*, 372 F.3d

572, 586 (3d Cir. 2004)). To satisfy the pleading standard, the complaint must "identify a custom

or policy, and specify what exactly that custom or policy was." *McTernan v. City of York, Pa.*,

564 F.3d 636, 658 (3d Cir. 2009). Under the second theory, a supervisor may be held liable when

"he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the

person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel.

J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Knowledge, for

these purposes, means "contemporaneous knowledge of the offending incident or knowledge of a

prior pattern of similar incidents." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000).

Plaintiff's allegations do not support either theory of supervisory liability. With respect to

the first theory, the complaint does not contain facts related to specific DOC or UCHC policies,

practices, or customs that caused the harm of which Plaintiff complains. In fact, the complaint's only reference to "policy" is that "Defendant's unlawful actions" were *contrary* to written policy." DE 12 at 18 (¶ 35) (emphasis added). Accordingly, Plaintiff has failed to state a claim against Hicks or UCHC for supervisory liability under the first theory of liability. *See Fox v. Bayside State Prison*, 726 F. App'x 865, 868–69 (3d Cir. 2018) (plaintiff failed to plead a viable failure-to-supervise claim where he "fail[ed] to identify a specific policy to undergird his claim, which necessarily forecloses the possibility of adequately pleading that any risk associated with the policy was unreasonable, that prison officials were aware of and indifferent to this risk, and that the specific policy led to his injury").

Plaintiff also fails to state a supervisory claim against Hicks or UCHC under the second theory. As to Hicks, Plaintiff does not allege that the Commissioner was personally involved in the alleged constitutional violations by subordinates or had contemporaneous knowledge of the misconduct and approved or acquiesced to it. *See Saisi v. Murray*, 822 F App'x 47, 48 (3d Cir. 2020) ("A defendant in a Section 1983 action 'must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'") (quoting *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007)) (citations omitted). Thus, the failure-to-supervise claim against Hicks in his individual capacity must be dismissed.

As to UCHC, as noted, no personal involvement is alleged and *respondeat superior* or vicarious liability theories are unavailable under Section 1983. *See Natale*, 318 F.3d at 583–84 (3d Cir. 2003); *Vogt*, 2016 WL 356078, at *3. There are no factual allegations that UCHC had in place "a relevant . . . policy or custom, and . . . the policy caused the constitutional violation

alleged." *Natale*, 318 F.3d at 583–84 (citations omitted); *see also Vogt*, 2016 WL 356078, at *3. Accordingly, the failure-to-supervise claim against UCHC must be dismissed as well.

### c. Failure to Train

Failure-to-train is a theory by which allegedly unconstitutional conduct of employees may be attributed to their state employer or supervisor. It must be alleged, however, in a manner that complies with Rules 8 and 12(b)(6).

Plaintiff alleges the following as to training: (1) the State Defendants[9] "were responsible for providing for the safety of all inmates, inmates under their custody, control and care, among other things, maintaining a professionally trained and knowledgeable correctional custody staff to protect the state and federal constitutional rights of its inmates," DE 1 at 9 (¶ 14); (2) "Defendant Corrections Officers were not properly trained," DE 1 at 14 (¶ 49); (3) "The conduct outlined [in the complaint] constitutes corrections malpractice in failing to adequately train . . . staff," DE 1 at 14 (¶ 50); and (4) the DOC "failed to properly train . . . its corrections officers . . . ." DE 1 at 15 (¶53).

To establish liability pursuant to Section 1983 for failure to train, the inadequate training must amount "to deliberate indifference to the rights of the person with whom the [inadequately trained subordinates] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). "[T]o establish deliberate indifference based on a single incident, a plaintiff must show that his injury was an 'obvious consequence' of the deficiency in the supervisor's

---

[9] He also names the Corrections Officer Defendants, presumably to the extent that they may have functioned as trainers, rather than trainees. The Corrections Officer Defendants have not been served and are not currently moving to dismiss.

training program." *Owens v. Coleman*, 629 F. App'x 163, 167 (3d Cir. 2015) (citing *Connick*, 563 U.S. at 1361). However, "[w]ithout notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62. In short, a conclusory allegation that an incident would not have occurred if the perpetrator were properly trained is ordinarily not enough.

Plaintiff's allegations regarding failure to train are conclusory, not factual. Beyond alleging generally that training was inadequate, Plaintiff has not identified training that should have been provided, described the current training program, alleged specific deficiencies in that training program, or explained any link between such deficiencies and violations of inmates' constitutional rights. Nor has Plaintiff taken the alternative route of alleging a pattern of similar constitutional violations by untrained employees, *see, e.g.*, *Connick*, 563 U.S. at 63 n.7 ("contemporaneous or subsequent conduct cannot establish a pattern of violations"). Nor has Plaintiff plausibly alleged that the harm he suffered was so predictable that the failure to train amounted to a conscious disregard for his rights. Plaintiff has also failed to allege that Hicks, in particular, had notice of any deficiencies in the training program. In sum, Plaintiff's conclusory statements that the corrections officers "were not properly trained" is thus insufficient to support a failure-to-train claim against the Moving Defendants, or Hicks in particular.

Accordingly, Plaintiff's failure-to-train claim is dismissed.

### d.  Deliberate Indifference to a Substantial Risk of Serious Harm

Plaintiff asserts that the "actions by the [Corrections Officer Defendants] . . . constituted an illegal and unconstitutional excessive use of force." DE 1 at 14 (¶ 44) He seeks to hold

defendant Hicks liable as well for "assaulting Plaintiff . . . using excessive force," apparently on a theory that Hicks was deliberately indifferent to a risk of serious injury. DE 1 at 16 (¶ 2).[10]

To be liable for deliberate indifference to a substantial risk of serious harm under the Eighth Amendment, a defendant prison official "must both 'know[ ] of and disregard[ ] an excessive risk to inmate health or safety.'" *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). "The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 837-38).

Plaintiff does not allege that Hicks knew of an excessive risk to Plaintiff's safety or, of course, that he actually assaulted or retaliated against Plaintiff. The complaint does not allege that Hicks knew of the Corrections Officer Defendants' actions either before they occurred or while they were occurring. Because *respondeat superior* is not available as a basis to hold prison officials liable in a Section 1983 action, the knowledge or actions of the Corrections Officer Defendants cannot simply be imputed to Hicks by virtue of his position. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *see also Wilson v. Seiter,* 501 U.S. 294, 298 (1991) (it must appear from the complaint that the defendant official acted with a "sufficiently culpable state of mind"). Thus, Plaintiff's excessive force claim must be dismissed insofar as it is asserted against Hicks.

---

[10] Once again, the Corrections Officer Defendants have not been served and are not among the Moving Defendants, so the discussion here focuses on Hicks.

### e. Deliberate Indifference to Serious Medical Needs

Plaintiff asserts that he "suffered physical and emotional abuse at the hands of Defendants," DE 1 at 14 (¶ 47), including "a swollen blackened right eye," "loss of hearing in his left ear," and "excruciating . . . back pain," DE 1 at 12 (¶ 36), and was "forced to endure further pain and suffering due to the lack of proper and adequate medical treatment." *Id.* at 14 (¶ 48).He seeks to hold Hicks and UCHC liable on a theory of deliberate indifference to his post-assault medical needs.

"The Eighth Amendment prohibits prison officials from being deliberately indifferent to an inmate's serious medical needs." *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "[T]o sustain this constitutional claim under 42 U.S.C. [Section] 1983, a plaintiff must make (1) a subjective showing that the defendants were deliberately indifferent to [his or her] medical needs and (2) an objective showing that those needs were serious." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quotations omitted). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (a deliberate indifference claim requires allegations of "acts or omissions" by prison officials indicating deliberate indifference to that prisoner's need). "A medical need is serious where it 'has been diagnosed by a physician as requiring treatment' or is 'so obvious that a lay person would easily recognize the necessity' of medical attention." *Palakovic*, 854 F.3d at 227 n.23 (quoting *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d, 326, 347 (3d Cir. 1987)). Deliberate indifference is defined as "knowledge of the need for medical care" and the "intentional refusal to provide that care." *Lanzaro*, 834 F.2d at 346.

Plaintiff has failed to allege a claim against Hicks for deliberate indifference to Plaintiff's serious medical needs. Assuming that Plaintiff's medical needs were serious within the meaning of the Eighth Amendment, Plaintiff nevertheless does not allege that Hicks, then Commissioner of the DOC, knew of this individual inmate's medical condition. Accordingly, Plaintiff's deliberate indifference claim against Hicks is dismissed for failure to state a claim. *See Sims v. Wexford Health Sources*, 635 F. App'x 16, 19 (3d Cir. 2015) ("Where a prison official does not have reason to believe or lacks actual knowledge that a prisoner is being mistreated or not treated at all by medical experts, she does not have the 'scienter' required for deliberate indifference.") (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Hampton v. Holmesburg Prison Offs.*, 546 F.2d 1077, 1082 (3d Cir. 1976) (no Section 1983 liability where, "[e]ven if liability had been established against the guards, there is not the slightest evidence showing that the warden had actual knowledge of the unanswered request for medical attention or that he acquiesced or participated in any denial").

Insofar as it is asserted against UCHC, Plaintiff's claim for deliberate indifference to serious medical needs must likewise be dismissed. Plaintiff appears to base his claim of deliberate indifference against UCHC on the alleged actions of Nurse Muhammad, who perfunctorily provided him with pain medication after the alleged assault.[11] DE 1 at 12 (¶ 34). Plaintiff alleges that Nurse Muhammad was an employee of UCHC, was the nurse on duty during the alleged incident, and "acted with deliberate indifference to [Plaintiff's] serious medical needs and denied him adequate medical care." DE 1 at 10 (¶ 16). However, Plaintiff's cause of action fails at the point where he attempts to hold UCHC vicariously responsible for its employee's acts. As stated previously, the doctrine of *respondeat superior* is inapplicable to suits

---

[11] Nurse Muhammad has not been served and is not a movant here.

brought pursuant to Section 1983. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 693–694 (1978). Because the complaint alleges no further facts by which the nurse's acts could be attributed to UCHC, the claim for deliberate indifference is dismissed as against UCHC.

### f.   Retaliation

Plaintiff alleges that he experienced retaliation for (a) complaining about his own assault by the Corrections Officer Defendants, and (b) speaking up on behalf of Guglielo, the other assaulted prisoner. DE 1 at 11 (¶¶ 19, 25–32, 42–43).

"A prisoner alleging that prison officials have retaliated against him for exercising his constitutional rights must prove that: 1) the conduct in which he was engaged was constitutionally protected; 2) he suffered 'adverse action' at the hands of prison officials; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." *Carter v. McGrady*, 292 F.3d 152, 157–58 (3d Cir. 2002) (citations omitted). "Once a prisoner has made his *prima facie* case, the burden shifts to the defendant to prove by a preponderance of the evidence that it would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." *Id.* (internal quotations and citation omitted). A successful showing of this same decision defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002). It is well established that the filing of a lawsuit and/or administrative grievance is constitutionally protected conduct. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

Even assuming Plaintiff has stated a claim of First Amendment retaliation, he has not stated such a claim against Hicks. The underlying retaliation allegations involve Plaintiff's verbal exchanges with Sergeant Comitini, DE 1 at 11 (¶¶ 19–20, 25–27), the alleged assault by the Corrections Officer Defendants, DE 1 at 13 (¶¶ 24–33), a threat by Sergeant Comitini

"advis[ing] [Plaintiff] not to go through with the complaint and that he would make [Plainitff's]

life a living hell . . .," *see* DE 1 at 11–12 (¶ 42), and the statement that thereafter Plaintiff "began

suddenly experiencing being treated indifferently such as [being] denied regular[] recreation,

phone usage and showers." DE 1 at 13.

Again, *respondeat superior* is not available here. Plaintiff has not alleged sufficient facts

to satisfy the "personal involvement" requirement of Section 1983; that is, he has not alleged that

Hicks knew of or was personally involved in the alleged retaliation. *See Rode*, 845 F.2d at 1208

("Personal involvement can be shown through allegations of personal direction or of actual

knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence,

however, must be made with appropriate particularity."); *see also Mincy v. Deparlos*, 497 F.

App'x 234, 240 (3d Cir. 2012) (prison administrators' "administrative role does not establish

personal involvement in the alleged underlying wrongdoing, absent evidence that they engaged

in retaliation"); *Solan v. Ranck*, 326 F. App'x 97, 101 (3d Cir. 2009) ("bare allegation that

[defendant] 'probably' had something to do with [plaintiff's] transfer based on her position of

authority fails to set forth facts indicating that [defendant] personally directed or knew of and

acquiesced in his transfer for retaliatory reasons."). The claim of retaliation must therefore be

dismissed as against Hicks. *Iqbal*, 556 U.S. at 676 (retaliatory harassment claim against state

official was precluded where plaintiff failed to allege knowledge and acquiescence with the

required particularity).

### g.  Conspiracy

The complaint's only reference to conspiracy is the unclear statement that "the aforesaid

conduct by the named Defendant Officers, constituted participation in an unlawful conspiracy,

28

with the motivation and intent to harm, abuse, intimidate and retaliate against Plaintiff . . . for his involvement in clearly established constitutionally protected activity . . . ." DE 1 at 15 (¶ 54).

"To prevail on a conspiracy claim under [Section] 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293–94 (3d Cir. 2018) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970). "After a plaintiff establishes that the object of the conspiracy was the deprivation of a federally protected right, 'the rule is clear that' the plaintiff 'must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action.'" *Id.* (quoting *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184–85 (3d Cir. 2009) (citation omitted)).

To show agreement, Plaintiff must allege that the defendants "somehow reached an understanding to deny [the plaintiff] his rights." *Kost v. Kozakiewicz*, 1 F.3d 176, 185 (3d Cir. 1993). In the absence of direct proof, such an agreement can be inferred from circumstantial evidence, such as evidence demonstrating that the alleged conspirators "did or said something . . . to create an understanding," "the approximate time when the agreement was made, the specific parties to the agreement[,] the period of the conspiracy, or the object of the conspiracy." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178–79 (3d Cir. 2010) (citations omitted).

The complaint does not refer to any communication or cooperation from which Hicks's participation in any agreement to deprive Plaintiff of his constitutional rights could be inferred. It follows that the complaint fails to allege a conspiracy claim against Hicks. *See Watson v. Sec'y Pa. Dep't of Corr.*, 436 F. App'x 131, 137 (3d Cir. 2011) (finding plaintiff's "allegations of conspiracy to be conclusory and wanting—he invokes 'conspiracy,' but fails to plead an actual

agreement between the parties"; thus, as "the linchpin for conspiracy is agreement, concerted action, without more, cannot suffice to state a conspiracy claim") (internal quotations and citation omitted). Accordingly, to the extent Plaintiff may have intended to assert a conspiracy claim against Hicks, this claim is dismissed.

### 3.   Request for Prospective Injunctive Relief

In his prayer for relief, Plaintiff seeks to "enjoin Defendants from further violating Plaintiff's rights, including but not limited to, further retaliation, subjecting Plaintiff to a retaliatory transfer, etc. after filing this suit[.]" DE 1 at 16 (¶ 5). The State Defendants acknowledge that "prospective relief may be sought against state officials acting in their official capacity," *see* DE 8-1 at 4–5, but do not further address Plaintiff's request for prospective injunctive relief in their motion to dismiss.

"[A] plaintiff seeking an injunction must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical." *Marcavage v. Nat'l Park Serv.*, 666 F.3d 856, 862 (3d Cir. 2012) (internal quotations and citation omitted). Further, "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)); *see also McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 225 (3d Cir. 2012) (holding that past injuries "may suffice to confer individual standing for monetary relief" but "a plaintiff seeking injunctive relief must demonstrate a likelihood of future harm").

Here, Plaintiff requests an injunction against "further violat[ion] of [his] rights" and "further retaliation." DE 1 at 16 (¶ 5). The complaint, filed in September 2021, makes only

oblique references to alleged retaliatory actions that occurred on unspecified dates after November 2019. Plaintiff's claim that some or all of the defendants may retaliate against him in the future, years after the conduct described in the complaint, is conjectural and speculative. Thus, Plaintiff has failed to allege a likelihood of future harm. *See Lyons*, 461 U.S. at 101–02; *Morales v. Grondolsky*, No. 08-2969, 2009 WL 1545841, at *1 (D.N.J. May 29, 2009) (dismissing claim for prospective injunctive relief where "the allegations do not establish any retaliation by the Warden and do not suggest that Plaintiff faces a real and immediate threat of future injury arising out of the challenged conduct"); *Schraeder v. Demilec (USA), LLC*, No. 12-6074, 2013 WL 3654093 (D.N.J. July 12, 2013) (dismissing counts for injunctive relief as separate causes of action, but declining to address requests for injunctive relief as remedies for other claims, "because at this stage in the litigation, before a substantial factual record has been developed, it would be premature to determine what remedies are appropriate"). Accordingly, to the extent Plaintiff intended to assert a claim for prospective injunctive relief against Hicks in his official capacity, the claim is dismissed for failure to state a claim.

## IV.    CONCLUSION

As noted above, the allegations, assumed to be true for purposes of a motion to dismiss, are submitted, in part, to support a Section 1983 claim against those directly responsible. As yet, however, the Plaintiff has not served the defendants alleged to have actually committed the unconstitutional acts. Now before the Court are only the State entities and supervisors of the individuals who allegedly harmed the Plaintiff; as to those entities and supervisors, the complaint must be dismissed.

As to the State and the DOC, Plaintiff's claims are dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Plaintiff's claims against the State and the DOC also fail to state a claim for relief under Rule 12(b)(6).

As to Hicks, Plaintiff's official-capacity claims, with the exception of claims for prospective injunctive relief, are dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). These claims also fail to state a claim for relief under Rule 12(b)(6). Plaintiff's individual-capacity claims against Hicks, while not jurisdictionally defective, fail to state a claim for relief under Rule 12(b)(6), and are dismissed.

As to UCHC, Plaintiff's claims fail to state a claim for relief under Rule 12(b)(6) and are dismissed.

Plaintiff is granted leave to file a proposed amended complaint within 60 days. Should no such document be filed, the dismissals shall become dismissals with prejudice. An appropriate order will be entered.


DATED:  September 2, 2022

/s/ Kevin McNulty
_____
       KEVIN MCNULTY
       United States District Judge